**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARCOS GONZALEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>INTELLIA THERAPEUTICS, INC., JOHN LEONARD, and LAURA SEPP-LORENZINO<br><br>                    Defendants | Case No. 1:25-cv-10353<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br><u>Demand for Jury Trial</u> |

Plaintiff Marcos Gonzalez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Intellia Therapeutics, Inc., ("Intellia" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Intellia's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Intellia securities between July 30, 2024 to January 8, 2025, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.     Defendants provided investors with material information concerning Intellia's Phase 1/2 study evaluating NTLA-3001 for the treatment of alpha-1 antitrypsin deficiency (AATD)-associated lung disease. Defendants' statements included, among other things, confidence in the Company's timeline for the aforementioned study, specifically that Intellia expected to dose the first patient in the second half of 2024. Defendants failed to disclose *inter alia* that the demand for viral-based editing was rapidly dwindling as non-viral delivery methods became a main target of the scientific research community due to their cost-effectiveness and more efficient development, thus making NTLA-3001 an inefficient program for Intellia to maintain. Such statements absent these material facts caused Plaintiff and other shareholders to purchase Intellia's securities at artificially inflated prices.

3.     The truth emerged on January 9, 2025, when Intellia published a press release announcing Company reorganization. In pertinent part, Defendants disclosed that Intellia would be halting all NTLA-3001 research and studies and that the Company would be reducing its workforce by 27% in 2025. Specifically, the Company announced that management decided to focus Intellia's resources on other pharmaceutical development and would be implementing cost saving in the form of a major reduction in force. As a result, Defendants pipeline priority readjustment resulted in the Company's once-touted NTLA-3001's discontinuation.

4.      Investors and analysts reacted immediately to Intellia's revelation. The price of Intellia's common stock declined dramatically. From a closing market price of $12.02 per share on January 8, 2025, Intellia's stock price fell to $10.20 per share on January 10, 2025 (which was the next trading session due to markets being closed on January 9, 2025 in observance of the passing of former President Jimmy Carter), a decline of about 15% in the span of just a single day.

## JURISDICTION AND VENUE

5.      Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

6.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

8.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Intellia is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

9.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

10.    Plaintiff purchased Intellia common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Intellia is attached hereto.

11.    Intellia Therapeutics, Inc. is a Delaware corporation with its principal executive offices located at 40 Erie Street, Suite 130, Cambridge, Massachusetts 02139. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "NTLA."

12.    Defendant John Leonard ("Leonard") was, at all relevant times, President and Chief Executive Officer of Intellia.

13.    Defendant Laura Sepp-Lorenzino ("Sepp-Lorenzino") was, at all relevant times, the Executive Vice President and Chief Scientific Officer of Intellia.

14.    Defendants Leonard and Sepp-Lorenzino are sometimes referred to herein as the "Individual Defendants." Intellia together with the Individual Defendants are referred to herein as the "Defendants."

15.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Intellia's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being

4

concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

16.     Intellia is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

17.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Intellia under respondeat superior and agency principles.

## **SUBSTANTIVE ALLEGATIONS**

### *Company Background*

18.     Intellia describes itself as a leading clinical-stage gene editing company, focused on developing potentially curative therapeutics using CRISPR/Cas9-based technologies.

19.     The Company advances its platform's modular solutions and research efforts on genome editing technologies as well as delivery and cell engineering capabilities to generate additional development candidates.

### *The Defendants Materially Misled Investors Concerning Intellia's Research and Development of NTLA-3001*

#### *July 30, 2024*

20.     On July 30, 2024, Intellia announced the authorization of its Clinical Trial Application (CTA) by the United Kingdom's Medicine and Healthcare products Regulatory Agency (MHRA) to initiate a Phase 1/2 study evaluating NTLA-3001 for the treatment of alpha-1 antitrypsin deficiency (AATD)-associated lung disease. CEO and President, John Leonard, stated, in pertinent part:

NTLA-3001 is a groundbreaking in vivo CRISPR-based gene insertion candidate designed to durably produce functional AAT protein at normal levels after a one-time treatment. We are excited to receive regulatory authorization to begin this important first-in-human study of NTLA-3001 for people living with AATD. In addition, this study serves to validate our modular gene insertion platform, which we plan to leverage to address numerous diseases caused by a missing or defective protein.

*August 8, 2024*

21.    On August 8, 2024, Intellia published second quarter 2024 financial results,

including an update on NTLA-3001. The press release stated, in relevant part:

NTLA-3001 is a first-in-class CRISPR-mediated *in vivo* targeted gene insertion development candidate for the treatment of AATD-associated lung disease. It is designed to precisely insert the wild-type *SERPINA1* gene, which encodes the alpha-1 antitrypsin (AAT) protein, with the potential to restore permanent expression of fully functional AAT protein to normal levels after a single dose. This is Intellia's first wholly owned gene insertion program.

In July, Intellia announced the authorization of its Clinical Trial Application by the United Kingdom's Medicines and Healthcare products Regulatory Agency (MHRA) to initiate a first-in-human study of NTLA-3001. ***Intellia expects to dose the first patient in the Phase 1/2 study of NTLA-3001 in the second half of 2024.***

[Emphasis added].

22.    In a same day earnings call hosted by Intellia, Defendant Sepp-Lorenzino provided

an overview of the Company's NTLA-3001 program, in pertinent part:

As a reminder, NTLA-3001 is designed to precisely insert the wild-type SER-PINA1 gene to permanently restore production and secretion of fully functional alpha-1 protein. Our goal is to replicate what we demonstrated in nonhuman primates to restore patients to normal alpha-1 levels after a single dose.

The Phase I/II study will be a 2-part open-label multicenter study to evaluate the safety, tolerability, PK and PD of NTLA-3001, up to 30 patients will be enrolled. Phase I will be a single ascending dose design with up to 3 cohorts. Patients will receive a single infusion of NTLA-3001, which consists of a sequential dose of AAV and LNP. The AAV delivers a SERPINA1 DNA template and the LNP delivers a CRISPR machinery. Based on our learnings from NTLA-2001 and NTLA-2002, we will be evaluating a 6 LNP dose of 50 milligrams. The only variable component from cohort to cohort in the dose escalation will be the dose of AAV. We

will begin with doses of AAV that we expect will show some level of activity even in the first cohort.

*Once we've identified the optimal dose, we plan to move into the Phase II, which will be a single dose expansion cohort to further characterize the activity of NTLA-3001. We are on track to dose the first patient in the second half of this year. Assuming success, NTLA-3001 could redefine how alpha-1 is treated and unlock a whole new category of diseases we can pursue with our in vivo gene insertion platform.*

[Emphasis added].

<u>*November 7, 2024*</u>

23.    On November 7, 2024, Intellia published third quarter 2024 financial results, including an update on NTLA-3001. The press release stated, in relevant part:

NTLA-3001 is a first-in-class CRISPR-mediated *in vivo* targeted gene insertion development candidate for the treatment of AATD-associated lung disease. It is designed to precisely insert the wild-type *SERPINA1* gene, which encodes the alpha-1 antitrypsin (AAT) protein, with the potential to restore permanent expression of fully functional AAT protein to normal levels after a single dose. This is Intellia's first wholly owned gene insertion program.

*Intellia expects to dose the first patient in the Phase 1/2 study of NTLA-3001 by year-end.*

[Emphasis added].

24.    Also on November 7, 2024, Intellia hosted a third quarter 2024 earnings call. As part of the earnings call, executive VP and Chief Scientific Officer, Laura Sepp-Lorenzino, spoke about NTLA-3001. Sepp-Lorenzino stated, in pertinent part:

NTLA-3001 is our first wholly owned in vivo gene insertion program for alpha-1 antitrypsin deficiency associated lung disease. It is designed to precisely insert the wild-type SERPINA1 gene, which encodes the alpha-1 antitrypsin protein. In previously presented nonhuman primate data, we've demonstrated the ability to produce fully functional alpha-1 protein at normal levels after a single dose. Notably, these normal levels of alpha-1 protein were durable through 2 years of follow-up in the completed study. We're on track to dose the first patient in the Phase I/II study of 3001 by year-end. If we're able to translate what we have seen in nonhuman primates to humans, we believe this will be a major step forward for

alpha-1 patients and the field of gene editing. Assuming success, it would unlock a whole new category of diseases which require a gain of function that we could pursue with our modular insertion platform.

25.     The above statements in Paragraphs 20 to 24 were false and/or materially misleading. Defendants created the false impression that they possessed reliable information pertaining to the viability of NTLA-3001's development and eventual marketing, if approved. In truth, Intellia's optimistic reports of timelines, including dosing and future studies of the drug, fell short of reality; the NTLA program was not viable or sustainable for the Company because viral-based editing programs remained expensive and inefficient in comparison to then-existing non-viral delivery methods. Intellia was not equipped to timely dose patients with NTLA-3001, maintain the drug's research and development, or even to maintain its full staff in light of the existing scientific landscape surrounding viral-based editing drugs. In fact, even if NTLA-3001 proved successful, the use of viral-based editing drugs is costly, inefficient, and poor mitigators of adverse effects in patients.

***The Truth Emerges***

<u>*January 9, 2025*</u>

26.     On January 9, 2025, Intellia published a press release announcing company reorganization. President and CEO, John Leonard, stated, in pertinent part:

We have made significant progress and built strong momentum in 2024 with three actively enrolling, Phase 3, pivotal studies. Our early clinical data for both NTLA-2002 and nex-z support novel, highly differentiated product profiles that directly address the significant unmet needs of patients and prescribers in HAE and ATTR. ***We understand the significant potential of our late-stage programs, and within a challenging market environment, have made a difficult decision to focus our resources predominantly on NTLA-2002 and nex-z where we have the greatest opportunity to create significant, near-term value***.

[Emphasis added].

27.     As part of the same press release, Intellia continued, detailing the steps taken by Intellia to reorganize the Company. In relevant part:

• Priority programs – NTLA-2002 for hereditary angioedema (HAE) and nexiguran ziclumeran (nex-z) for transthyretin (ATTR) amyloidosis – set foundation for significant, near-term value creation
• Phase 3 HAELO study evaluating NTLA-2002 for HAE to complete enrollment in the second half of 2025; Company plans to submit a Biologics License Application in the second half of 2026
• More than 550 patients expected to be enrolled by year end within the ongoing MAGNITUDE study for nex-z in ATTR-CM – the program remains ahead of internal enrollment estimates
• ***Pipeline priorities result in NTLA-3001 discontinuation and select, research-focused investment***
• ***Anticipated cost savings, including a net workforce reduction of approximately 27% in 2025, support company operations into 1H 2027 and through anticipated, first commercial launch in the U.S.***

[Emphasis added.]

28.     The aforementioned press releases and statements made by the Individual Defendants are in direct contrast to statements they made above. On those calls, Defendants provided an end-of-year timeline for dosing patients with NTLA-3001 and made no mention of any financial issues that could potentially halt the drug's advancement or negatively impact the Company's organizational structure leading to massive layoffs. In fact, Intellia continued to put forth positive statements reinforcing NTLA-3001's development and the Company's plan for the drug beyond the planned first dosage when, in reality, the changing landscape for viral-based editing drugs had rendered NTLA-3001 impracticable.

29.     Investors and analysts reacted immediately to Intellia's revelation. The price of Intellia's common stock declined dramatically. From a closing market price of $12.02 per share on January 8, 2025, Intellia's stock price fell to $10.20 per share on January 10, 2025, a decline of about 15% in the span of just a single day.

30.    A number of well-known analysts who had been following Intellia lowered their price targets in response to the Company's disclosures. For example, Wells Fargo lowered Intellia's price target from $70 to $60, noting the NTLA-3001 discontinuation and the Company's reduction in force. In relevant part:

> *We think discontinuation of the AATD program makes sense given changing landscape (eg. non-viral base editing). We continue to think ATTR-CM is the main value driver and see swift enrollment in Ph3 as promising sign of pt acceptance of gene editing.*
>
> \*     \*     \*
>
> NTLA-3001 (AATD-lung). NTLA has discontinued its in vivo SERPINA1 gene insertion AATD-lung program, in order to focus resources on nex-z and NTLA-2002 programs.
>
> Workforce reduction and cash runway extension. NTLA ended 4Q24 with a cash position of $862MM. In addition to discontinuation of NTLA-3001 and select research programs, NTLA will cut its workforce by 27% in 2025, which will extend cash runway from late 2026 to 1H27. As part of the restructuring, NTLA will incur charges of ~$8MM in 1Q25.
>
> [Emphasis added].

31.    Similarly, Wedbush lowered its 12-month price target for Intellia from $14.00 to $10.00 and provide a Neutral rating for the Company following the news. In pertinent part, Wedbush stated:

> NTLA updated its guidance to include a 2H26 BLA submission for its in vivo gene editing candidate NTLA-2002 in HAE, and discontinued NTLA-3001 for AATD (a positive, in our view, for competitor BEAM, Nierengarten, Outperform). The company also is reducing headcount by 27%, in order to keep its cash runway through H1:27. Unfortunately, in our view, NTLA-2002 and nex-z have limited commercial prospects, and we believe eliminating earlier programs restricts future growth opportunities.
>
> We view most recent results for NTLA-2002 as uncompelling, with efficacy toward the low end of benchmarks for competing and approved HAE prophylaxis therapies (detailed on next page, also see note). Additionally, for nex-z, NTLA's in vivo gene editing candidate for ATTR, we see an unfavorable competitive landscape in

ATTRCM with pricing pressure beginning following Attruby's approval, and two more agents likely approved before nex-z. Even assuming superior efficacy for nex-z, we see a limited commercial window with emerging agent ALN-TTRsc04 (ALNY, not covered) achieving comparable or greater TTR reduction and offering Q6M-Q12M dosing[].

32.     The fact that these analysts, and others, discussed Intellia's shortfall and below-expectation projection suggests the public placed significant weight on Intellia's prior margin estimates. The frequent, in-depth discussion of Intellia's guidance confirms that Defendants' statements during the Class Period were material.

### *Loss Causation and Economic Loss*

33.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Intellia's common stock and operated as a fraud or deceit on Class Period purchasers of Intellia's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Intellia's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Intellia's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

34.     Intellia's stock price fell in response to the corrective event on January 9, 2025, as alleged *supra*. On January 9, 2025, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning Intellia's research and development of NTLA-3001, including the timeline for first dosage.

35.     In particular, on January 9, 2025, Intellia announced a complete discontinuation of all research and development of NTLA-3001 and a major reorganization of the Company, which included a 27% reduction in force to be effective in 2025.

### Presumption of Reliance; Fraud-On-The-Market

36.     At all relevant times, the market for Intellia's common stock was an efficient market for the following reasons, among others:

(a)     Intellia's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)     Intellia communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)     Intellia was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about Intellia was reflected in and incorporated into the Company's stock price during the Class Period.

37.     As a result of the foregoing, the market for Intellia's common stock promptly digested current information regarding the Company from all publicly available sources and

reflected such information in Intellia's stock price. Under these circumstances, all purchasers of Intellia's common stock during the Class Period suffered similar injury through their purchase of Intellia's securities at artificially inflated prices, and a presumption of reliance applies.

38.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

### *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine*

39.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they misrepresented the viability of the NTLA-3001 program in light of the drug development landscape that existed during the Class Period.

40.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

41.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was

authorized and/or approved by an executive officer of Intellia who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Intellia's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Intellia's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Intellia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of November 1, 2024, there were 101.8 million shares of the

Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

44.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Intellia;

(c)    whether Defendants acted knowingly or recklessly;

(d)    whether the prices of Intellia's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(e)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

<u>**COUNT I**</u>

***Against All Defendants for Violations of***
<u>***Section 10(b) and Rule 10b-5 Promulgated Thereunder***</u>

48.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Intellia common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Intellia's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Intellia's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

52.     By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Intellia's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the

Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Intellia's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Intellia's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Intellia's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

55.     During the Class Period, Intellia's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Intellia's common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Intellia's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Intellia's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Against the Individual Defendants
### for Violations of Section 20(a) of the Exchange Act

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Intellia's misstatements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Intellia which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Intellia disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their

power and authority to cause Intellia to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Intellia's common stock.

62.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Intellia to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63.    By reason of the above conduct, the Individual Defendants and/or Intellia are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and

proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: February 11, 2025                    Respectfully submitted,

LEVI & KORSINSKY, LLP

/s/ Shannon L. Hopkins
Shannon L. Hopkins (BBO# 657485)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel. (203) 992-4523
Fax: (212) 363-7500
E-mail: shopkins@zlk.com

-and-

LEVI & KORSINSKY, LLP
Adam M. Apton (*pro hac vice* to be submitted)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff*