**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MARCOS GONZALEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  v.<br><br>INTELLIA THERAPEUTICS, INC., JOHN LEONARD, and LAURA SEPP-LORENZINO,<br><br>   Defendants. | No.: 1:25-cv-10353-DJC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE INTELLIA INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT ....................................................................................................................3

    A.    THE INTELLIA INVESTOR GROUP SHOULD BE APPOINTED
           LEAD PLAINTIFF.........................................................................................3

           1.    The Intellia Investor Group Is Willing to Serve as Class Representative....4

           2.    The Intellia Investor Group Has the "Largest Financial Interest" ...............5

           3.    The Intellia Investor Group Otherwise Satisfies the Requirements
                of Rule 23.........................................................................................6

           4.    The Intellia Investor Group Will Fairly and Adequately Represent
                the Interests of the Class and Is Not Subject to Unique Defenses.............11

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
           BE APPROVED .........................................................................................11

CONCLUSION..................................................................................................................13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................................8

*Arkansas Tchr. Ret. Sys. v. Insulet Corp.*,
177 F. Supp. 3d 618 (D. Mass. 2016) ...............................................................................6

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ..................................................................................................7

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) .......................................................................................9

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006).............................................................................................7, 8

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999).........................................................................................7

*Emerson v. Genocea Biosciences, Inc.*,
No. CV 17-12137-PBS, 2018 WL 839382 (D. Mass. Feb. 12, 2018) ................................9, 10

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) .......................................................................................7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).......................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...............................................................................................5, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .....................5, 12

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ................................................................................7, 8, 9

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ..........................................................................................11

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998). ..................................................................................5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................7

*In re Petrobras Securities Litigation*,
    No. 14-cv-09662 (S.D.N.Y.) ............................................................................................12

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y.2009) .......................................................................................7

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) .....................................................................................11

*Lax v. First Merchants Acceptance Corp.*
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)........................................5, 6

*Leavitt v. Alnylam Pharms., Inc.*,
    378 F. Supp. 3d 60 (D. Mass. 2019) .................................................................................6

*Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*,
    52 F. Supp. 3d 337 (D. Mass. 2014) .......................................................................7, 8, 11

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) .....................................10

*Luongo v. Desktop Metal, Inc.*,
    No. 1:21-CV-12099-IT, 2022 WL 2532498 (D. Mass. July 7, 2022) ...........................5, 6

*Miller v. Sonus Networks, Inc.*,
    No. CV 18-12344-GAO, 2019 WL 2567283 (D. Mass. June 21, 2019) .........................9, 10

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986)...........................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)...............................................................................11

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................................9

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

Securities Exchange Act of 1934.......................................................................................1, 5, 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

Movants James Scott Ewert, Yiu Chung Lee, and Ronnie Evans (collectively, the "Intellia Investor Group") respectfully submit this Memorandum of Points and Authorities in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing the Intellia Investor Group as Lead Plaintiff on behalf of a class (the "Class") consisting of all investors who purchased or otherwise acquired Intellia Therapeutics, Inc. ("Intellia" or the "Company") securities between July 30, 2024 to January 8, 2025, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

**PRELIMINARY STATEMENT**

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Intellia investors, including the Intellia Investor Group, incurred significant losses following the disclosure of Defendants' alleged fraud, which caused Intellia's share price to fall sharply, damaging the Intellia Investor Group and other Intellia investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, the Intellia Investor Group purchased or otherwise acquired 15,000 shares of Intellia common stock and 38 Intellia options contracts, expended $302,726 on these transactions, retained 12,100 of its shares of Intellia common stock, and as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately

1

$123,346 calculated on a first-in, first-out ("FIFO") basis, or $118,005 calculated on a last-in, first-out ("LIFO") basis, in connection with its Class Period transactions in Intellia securities. *See* Declaration of Emily C. Finestone in Support of Motion ("Finestone Decl."), Exhibit ("Ex.") A. Accordingly, the Intellia Investor Group believes that it has the largest financial interest in the relief sought in this Action. Beyond its considerable financial interest, the Intellia Investor Group also meets the applicable requirements of Rule 23 because its claims are typical of those of absent Class members and because it will fairly and adequately represent the interests of the Class.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, the Intellia Investor Group has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, the Intellia Investor Group respectfully requests that the Court enter an Order appointing the Intellia Investor Group as Lead Plaintiff for the Class and approving its selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, Defendants provided investors with material information concerning Intellia's Phase 1/2 study evaluating NTLA-3001 for the treatment of alpha-1 antitrypsin deficiency (AATD)-associated lung disease. Defendants' statements included, among other things, confidence in the Company's timeline for the aforementioned study, specifically that Intellia expected to dose the first patient in the second half of 2024. Defendants failed to disclose *inter alia* that the demand for viral-based editing was rapidly

2

dwindling as non-viral delivery methods became a main target of the scientific research community due to their cost-effectiveness and more efficient development, thus making NTLA-3001 an inefficient program for Intellia to maintain. Such statements absent these material facts caused the plaintiff in the Action and other shareholders to purchase Intellia's securities at artificially inflated prices.

The truth emerged on January 9, 2025, when Intellia published a press release announcing Company reorganization. In pertinent part, Defendants disclosed that Intellia would be halting all NTLA-3001 research and studies and that the Company would be reducing its workforce by 27% in 2025. Specifically, the Company announced that management decided to focus Intellia's resources on other pharmaceutical development and would be implementing cost saving in the form of a major reduction in force. As a result, Defendants' pipeline priority readjustment resulted in the Company's once-touted NTLA-3001's discontinuation.

Investors and analysts reacted immediately to Intellia's revelation. The price of Intellia's common stock declined dramatically. From a closing market price of $12.02 per share on January 8, 2025, Intellia's stock price fell to $10.20 per share on January 10, 2025 (which was the next trading session due to markets being closed on January 9, 2025 in observance of the passing of former President Jimmy Carter), a decline of about 15% in the span of just a single day.

## ARGUMENT

### A. THE INTELLIA INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Intellia Investor Group should be appointed Lead Plaintiff because it has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Action to its knowledge, and otherwise strongly satisfies the requirements of Rule 23.

3

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Intellia Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

**1.      The Intellia Investor Group Is Willing to Serve as Class Representative**

On February 11, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Intellia and other defendants, and advising investors in Intellia securities that they had until April 14, 2025—*i.e.*, 60 days from the

date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Finestone Decl., Ex. B.

The Intellia Investor Group has filed the instant motion pursuant to the Notice, and it has attached sworn Certifications executed by its members attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, the Intellia Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. The Intellia Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, the Intellia Investor Group has the largest financial interest of any Intellia investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted and routinely applied by courts in this District. *See Luongo v. Desktop Metal, Inc.*, No. 1:21-CV-12099-IT, 2022 WL 2532498, at *3-5 (D. Mass. July 7, 2022) (finding "many courts have considered" the four-factor *Lax* test in determining which movant has the largest financial

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

interest under the PSLRA and applying those factors); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64-66 (D. Mass. 2019) (same); *Arkansas Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 622 (D. Mass. 2016) (same). Of the *Lax* factors, courts in this District tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Luongo*, 2022 WL 2532498, at *3 ("Among the[] four [*Lax*] factors, courts have considered the approximate losses suffered to be the most important in determining the largest financial interest."); *Leavitt*, 378 F. Supp. 3d at 64 (same); *Insulet*, 177 F. Supp. 3d at 622 (same).

During the Class Period, the Intellia Investor Group: (1) purchased or otherwise acquired 15,000 shares of Intellia common stock and 38 Intellia options contracts; (2) expended $302,726 on these transactions; (3) retained 12,100 of its shares of Intellia common stock; and (4) as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $123,346 calculated on a FIFO basis, or $118,005 calculated on a LIFO basis, in connection with its Class Period transactions in Intellia securities. *See* Finestone Decl., Ex. A. To the extent that the Intellia Investor Group possesses the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**3.    The Intellia Investor Group Otherwise Satisfies the Requirements of Rule 23**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

6

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether lead plaintiff movants satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "[i]n deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff." *Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 52 F. Supp. 3d 337, 341 (D. Mass. 2014) (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y.2009)); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's "claims appear to be typical of the putative class's claims, in that they arise from the same course of events and involve the same legal theory as to the claims of the rest of the class." *Vertex*, 52 F. Supp. 3d at 341 (citing *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001)); *see also Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

The Intellia Investor Group's claims are typical of those of the Class.  The Intellia Investor Group alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Intellia, or by omitting to state material facts necessary to make the statements they did make not misleading.  The Intellia Investor Group, like other Class members, purchased Intellia securities during the Class Period at prices alleged to have been artificially inflated by Defendants misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Intellia's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), "possesses 'common interests and an absence of conflict with the class members[,] and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation," *Vertex*, 52 F. Supp. 3d at 341 (alteration in original) (quoting *Lernout*, 138 F. Supp. 2d at 46); *see also Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).  The class representative must also have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986).

The Intellia Investor Group is an adequate representative for the Class.  The Intellia Investor Group has submitted sworn Certifications executed by its members declaring their respective commitment to protect the interests of the Class.  *See* Finestone Decl., Ex. C.  There is

no evidence of antagonism or conflict between the Intellia Investor Group's interests and those of the Class. Further, the Intellia Investor Group's significant financial interest demonstrates that it has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. Moreover, as set forth in greater detail below, in Pomerantz, the Intellia Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits its choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Yiu Chung Lee is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation.

Further, the Intellia Investor Group constitutes an appropriate movant group of the type routinely appointed to serve as lead plaintiff. *See Miller v. Sonus Networks, Inc.*, No. CV 18-12344-GAO, 2019 WL 2567283, at *1 (D. Mass. June 21, 2019) ("[C]ourts in this district have not excluded unrelated parties from becoming lead plaintiffs as long as the group is 'sufficiently coherent to control the litigation.'" (quoting *Lernout*, 138 F. Supp. 2d at 44)); *Emerson v. Genocea Biosciences, Inc.*, No. CV 17-12137-PBS, 2018 WL 839382, at *5 (D. Mass. Feb. 12, 2018) (appointing five-person group, being "satisfied that [it] will adequately represent the plaintiffs' interests and will not cede control of the litigation to the attorneys"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" the PSLRA permits appointment of groups and appointing group of six as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff"); *Cendant*, 264 F.3d at 266 (noting "[t]he PSLRA explicitly permits a

9

'group of persons' to serve as lead plaintiff" and that "[t]he statute contains no requirement mandating that the members of a proper group be 'related' in some manner").

The Intellia Investor Group likewise has demonstrated its adequacy because it is a small and cohesive group of three investors who have submitted a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Finestone Decl., Ex. D. Courts routinely appoint groups as lead plaintiff pursuant to the PSLRA under such circumstances. *See, e.g.*, *Miller*, 2019 WL 2567283, at *1 (appointing group whose members "did not have a pre-existing relationship" because they "submitted a . . . declaration . . . that . . . sufficiently explains how the group plans to work together"); *Emerson*, 2018 WL 839382, at *4 (appointing five-person group because its "members have submitted a joint declaration discussing, albeit not in tremendous detail, their plan to exercise joint decision-making and work together to actively monitor the activities of counsel" (internal quotation marks omitted)); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class"); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

**4.      The Intellia Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption favoring the Intellia Investor Group's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Intellia Investor Group's ability and desire to fairly and adequately represent the Class has been discussed above.  The Intellia Investor Group is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.  Accordingly, the Intellia Investor Group should be appointed Lead Plaintiff for the Class.

**B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Vertex*, 52 F. Supp. 3d at 341.  The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

11

Here, the Intellia Investor Group has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and it has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Finestone Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, the Intellia Investor Group's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving the Intellia Investor Group's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

12

**CONCLUSION**

For the foregoing reasons, the Intellia Investor Group respectfully requests that the Court issue an Order: (1) appointing the Intellia Investor Group as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz as Lead Counsel for the Class.

Dated:  April 14, 2025

Respectfully submitted,

**POMERANTZ LLP**

/s/ Emily C. Finestone
Emily C. Finestone (BBO # 693684)
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movant the Intellia Investor Group and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant Yiu Chung Lee*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 14, 2025.

*/s/ Emily C. Finestone*
Emily C. Finestone (BBO # 693684)

14